Order Form (01/2005)

# United States District Court, Northern District of Illinois

HHN

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4947 | **DATE** | 8/5/2010 |
| **CASE TITLE** | Kelvin Howell vs. Illinois Tool Works, Inc. | | |

**DOCKET ENTRY TEXT**

Motion by Defendant for summary judgment [15] is granted. The clerk shall enter judgment pursuant to Fed. R. Civ. P. 58. Civil case terminated.

*Charles Norgle* [signature]

Mail AO 450

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    On August 12, 2009 Plaintiff Kelvin Howell ("Howell"), pro se, sued his former employer, Illinois Tool Works, Inc. ("ITW"), for employment discrimination based on race in violation of Title VII. His primary allegation in support of his claim is that he "was fired but 2 other employees did the same thing and they were not fired." Compl. ¶ 13. When discovery was complete ITW moved for summary judgment. The motion is fully briefed and before the Court.
    Howell worked at ITW as an Assembler. His primary duties were to assemble, test, pack and ship nail guns. Individuals called "Facilitators" supervised the Assemblers and reported up the chain to the "Production Supervisor." The Production Supervisor at all relevant times was Ralph Dungey ("Dungey"). He reported directly to the Plant Manager, Tom Webb ("Webb"), who managed the plant for the duration of Howell's employment.
    Howell was far from a model employee. During his time at ITW, Howell was written-up seven times for a variety of workplace infractions, including the use of inappropriate language, insubordination, spotty attendance and two verbal altercations with co-workers. After each infraction, Howell's supervisors admonished him to treat all co-workers with respect and cautioned that if he engaged in similar conduct he'd be subject to further discipline, up to and including termination. In addition to these warnings, ITW suspended Howell for three days after one verbal altercation and suspended him for five days after another. After the second altercation, Howell signed a "final warning memorandum," acknowledging that ITW would terminate him immediately if he engaged in similar behavior.
    On August 31, 2007 Dungey called a regular monthly meeting during which he made a questionable comment. In response, Howell shouted at Dungey and called him a liar. When the meeting concluded, Dungey met with Webb, complained of Howell's conduct and suggested that he be fired. Webb summoned Howell to his office, where Howell admitted that he called Dungey a liar. Howell then returned to work. The next business day, Dungey met with Webb to review Howell's personnel file. Based on Howell's prior conduct and considering that Howell was already on "final warning," the two decided to terminate Howell's

09C4947 Kelvin Howell vs. Illinois Tool Works, Inc.     Page 1 of 2

| STATEMENT |
|---|

employment. On September 3, 2007 Howell met with Webb and ITW's human resource manager. They explained to Howell that he was being terminated for insubordination, citing the incident where Howell called Dungey a liar. That was Howell's last day at ITW.

Summary judgment is proper when there is no showing of a genuine issue of material fact, and where the moving party is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts in favor of the non-moving party. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 780 (7th Cir. 2007). We note that "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors," as discrimination law would be unmanageable if disgruntled employees could defeat summary judgment on mere speculations about the defendant's motives. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994).

In this case, Howell, an African-American, claims that ITW terminated him because of his race. He doesn't identify any direct evidence of discrimination; thus he must prove his case using the indirect method and the familiar McDonnell-Douglas burden-shifting analysis. McDonnell-Douglas v. Green, 411 U.S. 792 (1973). The first step requires Howell to establish a prima facie case, or specifically that: (1) he was a member of a protected class, (2) he was meeting ITW's legitimate expectations, (3) he suffered an adverse employment action and (4) ITW treated other employees outside of Howell's class more favorably. ITW takes issue with two of these elements. It first argues that Howell's multiple suspensions and history of workplace infractions illustrate that he was not meeting ITW's legitimate expectations. The Court agrees. See, e.g., Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008) (affirming summary judgment where fired employee was suspended multiple times for disciplinary infractions and thus not meeting employer's expectations); Tomanovich v. City of Indianapolis, 457 F.3d 656, 666 (7th Cir. 2006) (finding that "insubordinate" employee did not meet legitimate expectations). ITW next argues that Howell cannot show that ITW treated other similarly-situated employees outside of Howell's class more favorably. Again the Court agrees. Howell asserts that two of his co-workers also called Dungey a liar but did not get fired. The problem, though, is that Howell is not similarly situated to those employees because they did not have a history of serious workplace infractions. See Tomanovich, 457 F.3d at 667 (employees not similarly situated where they did not engage in similar misconduct); Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005) (noting that a similarly situated person is one who "occupied the same job level and engaged in similar past misconduct" but was nevertheless treated differently); Phillips v. Union Pac. R.R. Co., 216 F.3d 703, 706 (8th Cir. 2000) ("Employees are similarly situated when they are involved in the same misconduct or misconduct that is of 'comparable seriousness.'"). As it happens, Howell cannot establish a prima facie case of discrimination. And even if he could, ITW gave a legitimate, non-discriminatory reason for terminating Howell's employment. There is nothing in the record to show that its reason was pretextual. Accordingly, ITW's motion for summary judgment is granted in its entirety.

IT IS SO ORDERED.